IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | : : : |
| Plaintiff, | : : |
| v. | :   CIVIL ACTION NO. : 2:14-CV-154-RWS |
| FIRST MULTIPLE LISTING SERVICES, INC., et al., | : : : |
| Defendants. | : |

## ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [Doc. No. 51], Plaintiff's Motion for Summary Judgment [Doc. No. 57], and Plaintiff's Motion for Leave to File Additional Authority [Doc. No. 66].

As an initial matter, Plaintiff's Motion for Leave to File Additional Authority [Doc. No. 66] is GRANTED. The Court has considered <u>The Langdale Company v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania</u>, No. 14-12723, 2015 WL 3823709 (11th Cir. June 22, 2015), in resolving these Motions for Summary Judgment.

**I.   Factual Background**

This case is an insurance coverage dispute between Defendants First

Multiple Listing Service and several of its directors (collectively "FMLS") and its liability insurer, Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia").

FMLS provides real estate listing services for the benefit of licensed real estate professionals [Doc. No. 51-1, ¶ 1, admitted]. FMLS's electronic listing database allows Georgia real estate professionals to share information with other real estate professionals regarding properties they list for sale, and to research and present property-related information to persons seeking to buy or sell real estate [Doc. No. 51-1, ¶ 2, admitted].

On October 14, 2010, Heather Bolinger, Paul Terry, and Anne Terry—purchasers and sellers of real property in the Atlanta metro area—brought a putative class action lawsuit against FMLS, certain brokerage companies, two Georgia boards of realtors, and three individual agents [Doc. No. 51-1, ¶ 3, admitted]. The lawsuit was entitled Bolinger et al. v. First Multiple Listing Service, Inc., Civil Action No. 2:10-cv-211-RWS ("Bolinger lawsuit") [Id.]. On September 26, 2014, this Court granted summary judgment against the Bolinger plaintiffs, and the Clerk entered judgment in favor of FMLS on October 27, 2014.

FMLS purchased a Private Company Protection Plus Policy ("Policy" from

2

Philadelphia with a policy period of March 24, 2010 to March 24, 2011 [Doc. No. 51-1, ¶ 5, admitted; Doc. No. 1-1, p. 1]. The Policy provides a $2 million limit of liability under Part 1, Directors and Officers Liability Insurance [Doc. No. 51-1, ¶ 6, admitted; Doc. No. 1-1, p. 3].

Insuring Agreement C of the Policy's D&O coverage part provides that "[Philadelphia] shall pay on behalf of the Private Company, Loss from Claims made against the Private Company during the Policy Period (or, if applicable, during the Extended Reporting Period), and reported to [Philadelphia] pursuant to the terms of this Policy, for a D&O Wrongful Act" [Doc. No. 51-1, ¶ 7, admitted; Doc. No. 1-1, p. 16]. FMLS is listed as the "Private Company" on Item 1 of the Policy Declarations [Doc. No. 51-1, ¶ 8, admitted; Doc. No. 1-1, p. 3]. The Policy defines "Claim" to include "a judicial or civil proceeding commenced by the service of a complaint or similar pleading" [Doc. No. 51-1, ¶ 9, admitted; Doc. No. 1-1, p. 22]. The Bolinger lawsuit was a "judicial or civil proceeding commenced by the service of a complaint" [Doc. No. 51-1, ¶ 10, admitted].

The Policy defines "D&O Wrongful Act" in pertinent part as "any actual or alleged . . . act, error, omission, misstatement, misleading statement, neglect, or breach of duty committed or attempted . . ." [Doc. No. 51-1, ¶ 11, admitted; Doc.

3

No. 1-1, pp. 16-17]. The <u>Bolinger</u> lawsuit alleged "error, omission, misstatement, misleading statement, neglect, or breach of duty" [Doc. No. 51-1, ¶ 12, admitted].

FMLS incurred over $4 million in defense costs and expenses in defending against the <u>Bolinger</u> lawsuit [Doc. No. 51-1, ¶ 19, admitted]. FMLS paid $11,156 in annual premiums during the Policy period [Doc. No. 51-1, ¶ 12, admitted]. FMLS notified Philadelphia of the <u>Bolinger</u> lawsuit and sought coverage under the Policy [Doc. No. 51-1, ¶ 13, admitted]. In a letter dated December 30, 2010, Philadelphia denied coverage for the <u>Bolinger</u> lawsuit [Doc. No. 51-1, ¶ 15, admitted]. Philadelphia again denied coverage in a letter dated March 15, 2011, after FMLS provided Philadelphia a copy of the Amended Complaint [Doc. No. 51-1, ¶ 16, admitted]. Philadelphia reiterated its coverage denial in a letter dated April 23, 2014, after it received a copy of the Proposed Second Amended Complaint [Doc. No. 51-1, ¶ 17, admitted]. Philadelphia again denied coverage in a letter dated July 15, 2014 [Doc. No. 51-1, ¶ 18, admitted].

On July 11, 2014, Philadelphia filed this lawsuit seeking a declaration that it has no obligation to provide insurance coverage to FMLS under the Policy, asserting coverage defenses in Courts I, III, IV, and V of its Complaint [Doc. No. 1]. FMLS filed three counterclaims, including a claim for breach of contract

AO 72A
(Rev.8/82)

(Count I), bad faith denial of coverage (Count II), and declaratory judgment on the existence of coverage (Count III) [Doc. No. 32].

## II. Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the

governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

### III. FMLS's Motion for Summary Judgment [Doc. No. 51]

FMLS seeks summary judgment as to two of its counterclaims: for breach of contract (Count I) and for declaratory judgment on the existence of coverage

6

(Count III). FMLS also seeks summary judgment as to the coverage defenses that Philadelphia asserts in four of the five counts of the Complaint: the applicability of the professional services exclusion (Count I); the lack of exposure to "Loss" (Count III); lack of coverage for Defense Costs when another insurer has a duty to defend (Count IV); and that the policy at issue is excess insurance (Count V). The Court will first address Defendants' arguments regarding Plaintiff's coverage defenses.

### A.   Coverage Defense – Professional Services Exclusion

In Count I of the Complaint, Philadelphia asserts that the Policy's "Professional Services" exclusion precludes coverage for the Bolinger lawsuit. The Professional Services exclusion provides as follows:

> With respect to coverage under Part 1, the Underwriter shall not be liable to make any payment for Loss in connection with any Claim made against the Insured based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the Insured's performance of or failure to perform professional services for others.

[Doc. No. 1-1, p. 35]. FMLS argues that the Professional Services exclusion fails for at least four reasons: (1) the Bolinger lawsuit involves business aspects of FMLS, not its professional services; (2) no case has held that an alleged kickback

7

scheme in violation of RESPA triggers a Professional Services exclusion; (3) Philadelphia's application of the exclusion is erroneously based upon false allegations; and (4) at a minimum, the term "Professional Services" is ambiguous and must be construed against Philadelphia.

FMLS argues that the Bolinger lawsuit involves business aspects of FMLS, not its professional services. The Court agrees. FMLS' professional services involve the maintenance of an electronic database on which its members, licensed real estate brokers, list and find properties. Importantly, Plaintiffs in the Bolinger lawsuit did not complain about FMLS' maintenance of its real estate listing database. Instead, the Bolinger Plaintiffs complained about the fees FMLS charges its members as well as the payment of a portion of such fees back to its members. More specifically, the Bolinger Plaintiffs alleged that the fee paid upon the final sale of properties listed on FMLS' electronic database is a "hidden settlement fee," and further, that FMLS' payment of a portion of the "hidden settlement fees" back to certain members constituted an improper "kickback."

Under Georgia law, "a professional must perform more than an ordinary task to furnish a professional service; the task must arise out of the acts specific to the individual's specialized knowledge or training." Auto-Owners Ins. Co. v.

8

State Farm Fire & Cas. Co., 678 S.E.2d 196, 201 (Ga. Ct. App. 2009). The manner in which FMLS structures and remits its fees is nothing more than an "ordinary task" associated with the business aspects of FMLS and has nothing to do with FMLS' professional services (which involve the maintenance of an electronic real estate listing database). The Bolinger lawsuit's allegations of wrongdoing regarding FMLS' fees do not involve FMLS' "specialized knowledge" and skills in providing an electronic real estate listing database. Accordingly, FMLS' professional services are not the basis for the allegations in the Bolinger lawsuit, and the Professional Services exclusion is inapplicable under the plain meaning of the Policy.

  The Court notes that even if the Court were to reach a different result regarding the plain meaning of the Policy, the Court would find that at a minimum the undefined term "professional services" is ambiguous. "When the language of an insurance contract is ambiguous and subject to more than one reasonable construction, the policy must be construed in the light most favorable to the insured, which provides him with coverage." Western Pacific Mut. Ins. Co. v. Davies, 601 S.E.2d 363, 369 (Ga. Ct. App. 2004). "Thus, an exclusion sought to be invoked by the insurer will be liberally construed in favor of the insured and

AO 72A
(Rev.8/82)

strictly construed against the insurer when it is not clear and unequivocal." Id. As a result of this ambiguity, the insurance contract would have to be construed against Plaintiff as a matter of law.

Defendants' Motion for Summary Judgment [Doc. No. 51] as to Count I of Philadelphia's Complaint is GRANTED.

### B.   Coverage Defense – Definition of "Loss"

In Count III of the Complaint, Philadelphia asserts that the Bolinger lawsuit does not allege a "Loss" under the Policy because it sought the "return of settlement fees, alleged hidden settlement fees or alleged kickbacks [from] the party who had initially received such payment." FMLS contends that this defense fails for three reasons: (1) Philadelphia is estopped from relying on this coverage defense because it failed to raise the defense in its initial letter denying coverage; (2) under Classic Distrib. & Bev. Group v. Travelers, Case No. CV 11-07075GAF RZX, 2012 WL 3860597 (C.D. Cal. Aug. 29, 2012), the return of funds to the Bolinger plaintiffs would have been a "reimbursement" rather than "restitution," and a reimbursement would constitute a covered "Loss"; and (3) the Bolinger plaintiffs also sought damages under the Sherman Act and for unfair competition, both of which are plainly covered by the Policy.

Part 4, Item J of the Policy defines "Loss" as:

1. Damages;
2. Defense Costs;

but Loss does not include:

1. criminal or civil fines or penalties imposed by law except that solely with respect to Part 3 (Fiduciary Liability Insurance) Loss includes fines or penalties imposed under Section 502 (I) and (l) of ERISA; or
2. taxes; or
3. matters deemed uninsurable under the law to which this Policy shall be construed; or
4. any amounts other than Defense Costs, which an Insured is obligated to pay as a result of a Claim seeking relief or redress in any form other than monetary damages; or
5. any costs other than Defense Costs associated with any accommodation required pursuant to the American with Disabilities Act (removed Civil Rights Act of 1964) and the rules or regulations promulgated thereunder, amendments thereto, or similar provisions of any federal, state or local law or common law.

[Doc. No. 1-1, p. 24].

### i.     Estoppel

Defendants contend that Philadelphia is estopped from relying upon this coverage defense because it failed to raise the defense in its initial December 30, 2010 letter denying coverage [Doc. No. 51-4, pp. 3-9]. The Court agrees. Under Georgia law, "[a]n insurer cannot both deny a claim outright and attempt to

reserve the right to assert a different defense in the future." Hoover v. Maxum Indem. Co., 730 S.E.2d 413, 416 (Ga. 2012). In an effort to avoid the waiver rule in Hoover, Philadelphia argues that the rule only applies when the waiver involves the duty to defend and not the duty to indemnify. However, based upon the case's history, the waiver principle in Hoover applies to both the duty to indemnify and the duty to defend. See, e.g., Latex Const. Co. v. Everest Nat. Ins. Co., 11 F.Supp.3d 1193, 1204-1205 (N.D. Ga. 2014). As such, Philadelphia is estopped from relying upon this coverage defense.

### ii. Reimbursement vs. Restitution

Even if Philadelphia were not estopped from relying upon their "Loss" defense, their argument fails on the merits. The Bolinger Plaintiffs sought ordinary money damages, not restitution. When a plaintiff seeks recovery of amounts that he or she did not actually pay to the insured defendant, then that recovery would not qualify as restitution but instead constitutes damages. See, e.g., Classic Distrib. & Beverage Group, Inc. v. Travelers Cas. & Sur. Co. of Am., No. CV 11-07075, 2012 WL 3860597, at *8 (C.D. Cal. Aug. 29, 2012) (holding

12

that amounts owed as reimbursement did not constitute uninsurable restitution).[1]

The recovery of "hidden settlement fees" and "kickbacks" sought by the Bolinger Plaintiffs did not constitute restitution because they did not pay fees directly to FMLS. This was the basis for this Court's Summary Judgment Order in the Bolinger lawsuit, in which the Court held that the Bolinger Plaintiffs' unjust enrichment claim against FMLS failed as a matter of law. Specifically, this Court recognized that the Bolinger Plaintiffs paid real estate commissions to their brokers and that the brokers then paid FMLS a fee out of the brokers' general operating accounts for FMLS' provision of listing services. This Court held that the Bolinger Plaintiffs could not "show that FMLS received money belonging to them or that FMLS cannot in good conscience keep the [fees]." Bolinger Summary Judgment Order, p. 25. Accordingly, the recovery of "hidden settlement fees" and "kickbacks" sought by the Bolinger Plaintiffs did not constitute restitution, and the recovery qualified as a "Loss" under the Policy.

---

[1] The Court notes that this decision was vacated by the district court in response to a joint motion by the parties as part of a settlement agreement. However, the Court finds the reasoning persuasive and applicable to the facts here. Although Plaintiff cites many cases in opposition to Travelers, these cases all involve plaintiffs seeking restitution through the return of an amount directly paid to the insured or an amount directly owed to plaintiffs by the insured. That is not the situation here.

13

### iii. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment [Doc. No. 51] as to Count III of Philadelphia's Complaint is GRANTED.

### C. Coverage Defenses – "Defense Costs" and Other Insurance Clause

In Count IV of the Complaint, Philadelphia contends that any defense expenses incurred by FMLS are not covered under the Policy because FMLS's other liability insurer, Chartis, had a duty to defend FMLS in the Bolinger lawsuit. Specifically, Philadelphia cites the Policy's definition of "Defense Costs," which includes "any reasonable and necessary legal fees and expenses incurred in the defense of a Claim," but excludes "any amounts incurred in defense of any Claim for which any other insurer has a duty to defend" (the "Defense Costs Carve-Out") [Doc. No. 1-1, p. 22-23]. In a similar vein, in Count V of the Complaint, Philadelphia contends that based upon the Policy's "Other Insurance" clause, the Policy is excess over any coverage provided by the policy issued to FMLS by Chartis. FMLS contends that the Policy's definition of "Defense Costs" and the Policy's Other Insurance Clause do not bar coverage.

When construed in isolation, the Policy's Defense Costs Carve-Out purports

14

to exclude all coverage for defense costs when another insurer has a duty to defend. However, both the Policy's Defense Costs Carve-Out and the Policy's Other Insurance provision pertain to the same issue: how the Policy operates when another policy also provides coverage. As such, the Policy's Defense Costs Carve-Out cannot be construed in isolation. Instead, both provisions must be construed in harmony with one another. See ALEA London Ltd. v. Woodcock, 649 S.E.d2 740, 745 (Ga. Ct. App. 2007) (the Court must "consider the policy as a whole, to give effect to each provision, and to interpret each provision to harmonize with each other").

As to the Policy's Other Insurance provision, "when two insurance policies covering the same risk both contain 'other insurance' clauses that cannot be reconciled, those clauses cancel each other out and the insurers share in liability pro rata." The Am. Cas. Co. of Reading v. MAG Mut. Ins. Co., 185 F. App'x 921, 925 (11th Cir. 2006). Other insurance provisions are not reconcilable "if 'both policies in question provide that if there be other insurance, each shall be responsible only for excess over any other valid and collectible insurance.'" St. Paul Fire & Marine Ins. Co. v. Valley Forge Ins. Co., Civil Action No. 1:06-CV-2074-JOF, 2009 WL 789612, at *4 (N.D. Ga. Mar. 23, 2009). In this case, the

15

AO 72A
(Rev.8/8
2)

Philadelphia Policy states:

> If the Insured has any other insurance for Claims covered hereunder, the insurance provided by this Policy shall be excess over such other insurance, regardless of whether such other insurance is collectible or designated as primary or excess.

[Doc. No. 1-1, p. 32]. The Chartis policy contains a similar provision:

> [I]nsurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance available to any insured unless such other insurance is written only as specific excess insurance over the policy limit of liability provided by this policy.

[Doc. No. 51-4, p. 62]. Since the Other Insurance provisions in the two policies each purport to be excess over other insurance, the provisions cannot be reconciled and cancel each other out. As such, Philadelphia and Chartis share in liability pro rata.

When the Defense Costs Carve-Out is construed together and harmonized with the Policy's Other Insurance provision, the result is that the Defense Costs Carve-Out does not limit coverage for Philadelphia's pro rata share of liability for the <u>Bolinger</u> lawsuit because Chartis's duty to defend does not extend to Philadelphia's share of liability in the first place. In other words, the Defense Costs Carve-Out does not limit coverage with respect to Philadelphia's pro rata share of liability because no other insurer has a duty to defend Philadelphia's

16

AO 72A
(Rev.8/82)

share of liability for the Bolinger lawsuit. As such, Defendants' Motion for Summary Judgment [Doc. No. 51] as to Counts IV and V of Philadelphia's Complaint is GRANTED.

### D. Conclusion

For the reasons stated above, FMLS' Motion for Summary Judgment [Doc. No. 51] as to Counts I, III, IV, and V of Philadelphia's Complaint is GRANTED.

As to FMLS' Motion for Summary Judgment [Doc. No. 51] on its counterclaim for breach of contract, the Court finds that Philadelphia has a contractual obligation to provide coverage for losses arising out of the Bolinger lawsuit and that it has breached that contractual obligation. As such, FMLS' Motion for Summary Judgment [Doc. No. 51] as to its counterclaim for breach of contract is GRANTED.

FMLS' Motion for Summary Judgment [Doc. No. 51] on its counterclaim seeking a declaratory judgment is also GRANTED. Pursuant to 28 U.S.C. §§ 2201-2201, the Court declares the following:

(1) The Bolinger lawsuit, defense costs incurred by FMLS in connection therewith, and any resulting damages and other losses therefrom are covered under the terms and conditions of the Policy; and

AO 72A
(Rev.8/82)

(2)   No exclusion, condition, or other term in the Policy bars or negates coverage for the <u>Bolinger</u> lawsuit, defense costs incurred in connection therewith, and any resulting damages and other losses therefrom.

### IV.   Philadelphia's Motion for Summary Judgment [Doc. No. 57]

Philadelphia has moved for summary judgment as to the coverage defenses asserted in Counts I, III, IV, and V of the Complaint. As the Court has granted summary judgment to FMLS on the inapplicability of those coverage defenses, Philadelphia's Motion for Summary Judgment [Doc. No. 57] as to Counts I, III, IV, and V is DENIED.

Philadelphia has also moved for summary judgment as to FMLS' counterclaim for bad faith. O.C.G.A. § 33-4-6 provides the exclusive remedy for an insured's bad faith refusal to pay insurance proceeds. <u>Great Southwest Express Co. v. Great Am. Ins. Co.</u>, 665 S.E.2d 878 (Ga. Ct. App. 2008). For FMLS to prevail on a claim for bad faith, it must prove: (1) that the claim is covered under the Policy; (2) that a demand for payment was made against the insurer within 60 days prior to filing suit; and (3) that the insurer's failure to pay was motivated by bad faith. <u>Lawyers Title Ins. Co. v. Griffin</u>, 691 S.E.2d 633, 636 (Ga. Ct. App.

AO 72A
(Rev.8/8
2)

2010) (citation omitted).

To determine whether the insurer engaged in bad faith, an insured must show by evidence that "under *the terms of the policy* upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no 'good cause' for resisting and delaying payment." Id. (citing Georgia Intl. Life Ins. Co. v. Harden, 280 S.E.2d 863, 866 (Ga. Ct. App. 1981) (emphasis in original). Courts grant summary judgment to insurers on bad faith claims where the issue of liability was close. See, e.g., Homick v. Am. Casualty Co., 433 S.E.2d 318, 319 (affirming grant of summary judgment to insurer on bad faith: "Ordinarily, the question of good or bad faith is for the jury, but when there is no evidence of unfounded reason for the nonpayment, or if the issue of liability is close, the court should disallow imposition of bad faith penalties. Good faith is determined by the reasonableness of nonpayment of a claim.") (quoting Intl. Indem. Co. v. Collins, 367 S.E.2d 786, 786 (Ga. 1988)).

The Court finds that the issue of liability was close in this case. It was not "unreasonable" or "unfounded" for Philadelphia to assert that FMLS cannot, in regard to the same lawsuit, both obtain coverage under the Chartis policy for its performance of professional services, and yet also obtain coverage under the

19

Policy here, which excludes coverage for its performance of professional services. Additionally, there is lack of binding authority on the reimbursement/restitution issue relating to "Loss." As such, Philadelphia is entitled to summary judgment on FMLS' bad faith counterclaim, and its Motion for Summary Judgment [Doc. No. 57] as to the bad faith counterclaim is GRANTED.

## V.  Conclusion

Plaintiff's Motion for Leave to File Additional Authority [Doc. No. 66] is GRANTED. FMLS' Motion for Summary Judgment [Doc. No. 51] is GRANTED. Philadelphia's Motion for Summary Judgment [Doc. No. 57] is GRANTED in part and DENIED in part. Philadelphia's Motion is DENIED as to Counts I, III, IV, and V of the Complaint. Philadelphia's Motion is GRANTED as to FMLS' bad faith counterclaim. The only triable issue remaining is the amount Philadelphia owes FMLS. The parties are ORDERED to submit a proposed consolidated pretrial order within thirty days.

**SO ORDERED**, this 22nd day of March, 2016.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)